NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK SCHEPISI and LAURA SCHEPISI, | Civil Action No.: 18-15006 (JLL) |
| Plaintiffs, | OPINION |
| v. | |
| SANTANDER BANK, N.A., PHH MORTGAGE, *et al.*, | |
| Defendants. | |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a Motion to Dismiss the Complaint filed by Defendants PHH Mortgage ("PHH") and Santander Bank, N.A. ("Santander"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 7). Plaintiffs Mark and Laura Schepisi have submitted an Opposition to Defendants' Motion, (ECF No. 11), to which Defendants have replied, (ECF No. 22). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendants' Motion to Dismiss in part, dismisses Count IV of the Complaint without prejudice, and declines to address Counts I through III and Count V of the Complaint at this time.

### I. BACKGROUND[1]

In May of 2006, Plaintiffs purchased a home located at 254 Fairview Avenue in Rutherford,

---

[1] This background is derived from allegations in the Complaint, (ECF No. 1-1 ("Compl.")), which the Court accepts as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

New Jersey, obtaining a mortgage of $480,000.00 from Interchange Bank. (Compl. ¶¶ 1–2). Interchange Bank then assigned Plaintiffs' mortgage to Defendant PHH, who then assigned the mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"). (Compl. ¶¶ 3–4). Finally, in May of 2014, MERS assigned Plaintiffs' mortgage to Defendant Santander. (Compl. ¶ 5). PHH remained Plaintiffs' mortgage servicer even following the May 2014 assignment and continued to accept Plaintiffs' mortgage payments. (Compl. ¶ 6).

In October of 2016, Plaintiffs began to experience financial difficulties, and, facing the prospect of foreclosure of their home, inquired about the process of applying for a mortgage modification with PHH. (Compl. ¶¶ 7, 20–21). Plaintiffs eventually submitted a mortgage modification application to PHH in February of 2017. (Compl. ¶ 23). Following the submission of their application, Plaintiffs "contacted PHH Mortgage via telephone several times each week" to inquire about the status of their application, and during those calls Plaintiffs "were transferred to . . . different individual[s] who had no knowledge of the application and provided no assistance in processing the application." (Compl ¶ 24). PHH representatives contacted Plaintiffs twice in March of 2017 to request additional documentation, and Plaintiffs promptly complied with both requests. (Compl. ¶¶ 25–27). Throughout April of 2017, Plaintiffs continued to check on the status of their application, leaving a total of seven voice messages for the PHH case manager assigned to Plaintiffs' account, and were informed by PHH representatives on occasion that Plaintiffs' documentation could not be located or had not been entered into the computer system. (Compl. ¶¶ 28–29, 32). On one occasion, Mr. Schepisi "received an assurance from [a PHH] representative that the modification application would be reviewed and processed." (Compl. ¶ 30). Mr. Schepisi contacted PHH in writing on two occasions in April of 2017 to express frustration with PHH's lack of response, "despite repeated assurances from [PHH representatives] that the

Plaintiffs' application . . . would be properly processed and considered." (Compl. ¶ 33). Plaintiffs ultimately received notice that their mortgage modification application had been denied. (Compl. ¶ 9).

In September of 2017, Santander filed a foreclosure action against Plaintiffs in the Superior Court of New Jersey, Chancery Division, Docket No. F-021875-17. (ECF No. 7-3 at 21–29). Plaintiffs filed a motion to dismiss the foreclosure action, (ECF No. 7-3 at 47–84), which Judge Robert P. Conillo denied on December 1, 2017, (ECF No. 7-3 at 123–31). In April of 2018, Plaintiffs refinanced their mortgage, though they allege that they were required to accept an interest rate higher than the interest rate on the mortgage they sought to modify with PHH. (Compl. ¶¶ 62–63). As a result of Plaintiffs' refinancing decision, the parties stipulated to the dismissal of the foreclosure action on May 10, 2018. (ECF No. 7-3 at 140).

On August 17, 2018, Plaintiffs filed this action in the Superior Court of New Jersey, Law Division, Bergen County, alleging that Defendants' conduct violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et seq.* ("NJCFA"), the implied covenant of good faith and fair dealing, the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), and the common law of negligent misrepresentation. (Compl. ¶¶ 36–68). On October 16, 2018, Santander removed this action to this Court pursuant 28 U.S.C. §§ 1331 and 1441. (ECF No. 1). Both Santander and PHH now move to dismiss, arguing that the Complaint fails to state a claim for relief. (ECF No. 7).

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted).

## III. ANALYSIS

### A. RESPA

Plaintiffs claim that Defendants' conduct violated The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), and two of its administrative implementing regulations, collectively known as "Regulation X"—those governing error resolution procedures, 12 C.F.R. § 1024.35, and loss mitigation procedures, 12 C.F.R. § 1024.41. (Compl. ¶¶ 51–63).

#### 1. Error Resolution Procedures

RESPA establishes a mechanism for borrowers to obtain information from and to contest

4

errors made by their mortgage servicers. RESPA requires a servicer to respond to any "qualified written request" from a borrower—defined as a "written correspondence" from the borrower to the servicer that (1) identifies the borrower and the borrower's account; and (2) either asserts an error in the borrower's account or requests information related to the servicing of the borrower's account. 12 U.S.C. § 2605(e)(1). A servicer that receives a formal notice of error ("NOE") from a borrower must comply with RESPA regulations governing error resolution procedures, which define a NOE as "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). The regulation enumerates ten "covered errors" that a borrower may contest, as well as "[a]ny other error relating to the servicing of a borrower's mortgage loan." *Id.* § 1024.35(b)(1)–(10), (11). In general, within five days of receiving a NOE, a servicer must issue a written response acknowledging receipt and notifying the borrower either that the error has been corrected or that the servicer, after a reasonable investigation, has determined that no error occurred. *Id.* § 1024.35(e)(1)(i)(A)–(B); *see also Bukowski v. Wells Fargo Bank, N.A.*, No. 17-3253, 2018 WL 6584119, at *2 (3d Cir. Dec. 13, 2018).

Plaintiffs claim that Defendants failed to comply with their duties under 12 C.F.R. § 1024.35 by failing to efficiently process and ultimately denying Plaintiffs' loan modification application. (Compl. ¶ 52). Defendants argue that the Complaint fails to allege sufficient facts to support a claim pursuant to Section 1024.35. (ECF No. 7-1 ("Mov. Br.") at 21–22). The Court agrees. Although the Complaint correctly recites several duties that apply to mortgage servicers pursuant to this regulation, (*see* Compl. ¶¶ 53–54, 56–60), the Complaint contains very few factual allegations describing actual communications that took place between Plaintiffs and Defendants.

5

Critically, the Complaint contains no allegations that Plaintiffs sent a NOE to Defendants at any time, nor allegations explaining when or how Defendants responded. Plaintiffs allege only that, on several occasions, they "advised the Defendants of their error in failing to properly consider and ultimately denying their mortgage modification application," (Compl. ¶ 52), and that, "[n]otwithstanding the Plaintiffs' repeated assertions that the Defendants committed errors in relation to their application, the Defendants failed to take the required steps pursuant to" RESPA, (Compl. ¶ 55).

Plaintiffs assure the Court in their Opposition Brief that "Notices of Error were sent to [Defendants] and this will all come out during discovery." (ECF No. 11 ("Opp. Br.") at 11). However, the only written communications alleged in the Complaint are two letters that Mr. Schepisi sent to PHH in April of 2017 expressing "his frustration with the lack of cooperation on the part of PHH Mortgage, . . . false promises by PHH Mortgage, . . . [and] lack of response" from PHH. (Compl. ¶¶ 31, 33). The Complaint does not allege that these letters were meant to advise PHH of any of the "covered errors" enumerated in Section 1024.35(b)(1)–(11). Plaintiffs claim for the first time in their opposition papers that, during one telephone conversation regarding Plaintiffs' application, "a representative of the Defendants stated that [Plaintiffs'] monthly income was only a few hundred dollars below what Defendants' guidelines supposedly require," and that "Defendants later advised [Plaintiffs] that this statement was in error, yet they never corrected their error." (ECF No. 11-1 ¶ 9; *see also* Opp. Br. at 8). Even if this allegation were contained in the Complaint, which it is not, Plaintiffs nevertheless fail to explain how this telephone conversation falls within the written communications governed by RESPA's error resolution procedures. All other communication between Plaintiffs and PHH appears to have been via telephone, as well. (*See* Compl. ¶¶ 24, 28–30).

Furthermore, as Defendants argue, it is not clear that the processing of a mortgage modification application even falls within the RESPA definition of mortgage "servicing" such that an error related to the processing of such an application could fall within the ambit of Section 1024.35(b). (*See* ECF No. 12 at 8–10). RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Plaintiffs do not allege that their letters expressing frustration with PHH's delays in processing their application for a loan modification were intended to communicate errors related to PHH's receiving and making payments on the loan. The allegations are therefore too sparse for the Court to find that any letters sent by Plaintiffs plausibly constituted NOEs pursuant to Section 1024.35. *See Hager v. CitiMortgage, Inc.*, No. 16-3348, 2017 WL 751422, at *6 (D.N.J. Feb. 27, 2017) (interpreting RESPA's definition of "servicing" narrowly in considering whether communications from a borrower were "qualified written requests" under the statute).

Plaintiffs argue that their RESPA claim should not be dismissed because the "Complaint cites the relevant statutory and regulatory provisions which afford them the right to bring claims against Defendants." (Opp. Br. at 13). But the Complaint must contain *factual allegations* that, when taken as true, give rise to a claim for relief pursuant to those provisions. A mere "formulaic recitation" of the legal standard cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Without any allegations that Plaintiffs submitted at least one NOE to Defendants, and without any allegations explaining how Defendants responded, the Court cannot conclude that the Complaint adequately states a claim that Defendants violated Section 1024.35.

## 2. Loss Mitigation Procedures

The Complaint's RESPA claim also includes a citation to the regulations governing loss mitigation procedures, 12 C.F.R. § 1024.41 (which Plaintiffs mistakenly cite as 12 C.F.R. § 1024.21). (Compl. at 10). This provision requires, *inter alia*, that a servicer receiving a loss mitigation application 45 days or more before a foreclosure sale:

> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
>
> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and [a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete]. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

12 C.F.R. § 1024.41(b)(2)(i)(A)–(B). The few allegations in the Complaint relating to this provision are vague and conclusory. Plaintiffs offer little more than a summary of possible violations of Section 1024.41 that a servicer may commit. (Compl. ¶ 59). Nevertheless, Plaintiffs do allege that, following the submission of their mortgage modification application in February of 2017, PHH responded approximately thirty days later to request additional information. (Compl. ¶ 25). Reading the Complaint to allege that this was PHH's first acknowledgement of Plaintiffs' mortgage modification application, and since a foreclosure action was not filed until September of 2017 (and therefore the application was received more than 45 days before a potential foreclosure sale), Plaintiffs sufficiently allege that PHH failed to notify them within five days of receiving the

application whether the it was complete or incomplete, as required by Section 1024.41(b)(2)(i)(B).

However, in "order to bring a claim under RESPA, a plaintiff must [also] sufficiently allege one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with [12 U.S.C.] § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605. Additionally, when basing a claim on actual damages, the borrower has the responsibility to present specific evidence to establish a causal link between the financing institution's violation and their injuries." *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 592 (D.N.J. 2016) (quoting *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016)). In order "to survive a motion to dismiss, the complaint must contain factual allegations suggesting that any damages [a] plaintiff suffered were proximately caused by [the] defendant's violations of § 2605, and conclusory allegations to that effect will not suffice." *Id.* (quoting *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 445 (E.D.N.Y. 2013).

Plaintiffs allege that, "[a]s the direct and proximate result of the acts and/or omissions of the Defendants . . . the Plaintiffs suffered irreparable harm to their credit rating(s)," requiring Plaintiffs "to obtain a co-signer in connection with the refinance of the loan on the subject premises." (Compl. ¶ 61). Furthermore, the Complaint alleges that when Plaintiffs ultimately refinanced their mortgage, they "were required to pay a higher interest rate than the market rate available at the time [they] applied for a loan modification." (Compl. ¶ 62). Defendants argue that Plaintiffs' RESPA claim must be dismissed because these allegations do not satisfy RESPA's actual damages pleading requirement. (Mov. Br. at 22–23).

The Court finds Plaintiffs' damages allegations are insufficiently connected to the alleged violation to satisfy RESPA's damages requirement. To the extent Plaintiffs allege that they suffered an actual loss in connection with their mortgage refinancing, the Complaint alleges only

that those damages resulted from PHH's ultimate *denial* of their mortgage modification application—not from PHH's failure to respond within five days of receipt of the original application, which is the only plausible RESPA violation sufficiently alleged in the Complaint. In other words, the Complaint fails to allege any "causal link" between PHH's alleged violation (a delay in acknowledging the initial mortgage modification) and Plaintiffs' obligation to pay a higher interest rate on their refinanced loan. *Block*, 221 F. Supp. 3d at 592.

As Defendants point out, Plaintiffs' RESPA claim appears to be premised on the notion that they were legally entitled to a loan modification, and that Defendants' denial of the modification proximately caused the alleged damages. (*See* Mov. Br. at 7; Opp. Br. at 10 (acknowledging that "all of Plaintiffs['] claims flow logically from a determination by the jury that the Plaintiffs were wrongfully denied a loan modification, and . . . were forced to obtain financing from another institution")). But the regulation at issue expressly states that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a). "Section 1024.41 provides a borrower more with a right to process, rather than a right to any specific outcome," and Plaintiffs do not allege any damages resulting from Defendants' failure to adhere to that process. *Loconsole v. Wells Fargo Mortg.*, No. 17-8362, 2018 WL 3158816, at *6 (D.N.J. June 28, 2018). Because the Complaint does not connect Plaintiffs' damages to the alleged violation of Section 1024.41, the Complaint fails to state a claim for relief pursuant to that provision. *See Bukowski*, 2018 WL 6584119, at *3 (affirming dismissal of RESPA claim where the plaintiffs did "not articulate any facts linking [the mortgage servicer's] alleged RESPA violations to damages suffered 'as a result' of those failures") (quoting 12 U.S.C. § 2605(f)(1)(A)).

B.   **TILA**

Plaintiffs include a citation to "Regulation Z," 12 C.F.R. § 226.5b, of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), in Count IV of their Complaint—the same Count alleging the RESPA violation. (Compl. at 10). Regulation Z governs the disclosures made to borrowers by creditors providing open-end home equity loans. 12 C.F.R. § 226.5b. Like RESPA, TILA requires that a plaintiff plead either actual or statutory damages resulting from a failure to receive required disclosures. *Shahin v. PNC Bank*, 625 F. App'x 68, 72 (3d Cir. 2015).

Defendants argue that Plaintiffs' TILA claim is "vague" and that "a defendant cannot be left to guess at what the alleged TILA violation is." (Mov. Br. at 26). Indeed, the Complaint does little to explain which provisions of TILA or Regulation Z Plaintiffs believe to be at issue, nor does it allege any disclosures or failures to make disclosures on the part of Defendants that ran afoul of those provisions. In opposing Defendants' Motion to Dismiss, Plaintiffs neither dispute Defendants' arguments concerning Plaintiffs' TILA claim nor raise any substantive defense of the TILA claim whatsoever. (*See* Opp. Br. at 11–13). Moreover, "the allegations of the [C]omplaint do not support an inference that [Plaintiffs] suffered any actual damages from [a] failure to receive . . . disclosures" in accordance with this regulation. *Shahin*, 625 F. App'x at 72. The Court therefore finds that the Complaint fails to state a claim under TILA and dismisses that claim.

* * *

Plaintiffs have not sought leave to amend the Complaint in light of Defendants' Motion to Dismiss. However, the Court does not find at this time that amendment would be inequitable or futile and therefore grants Plaintiffs leave to amend within 21 days. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has

leave to amend within a set period of time, unless amendment would be inequitable or futile.").

C. **State Law Claims**

Plaintiffs' RESPA and TILA claims were the basis for this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331. (*See* ECF No. 1). The Court therefore declines to exercise supplemental jurisdiction to address Plaintiffs' state law claims at this time, until and unless Plaintiffs file an amended complaint that satisfies the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure for their federal claims. *See* 28 U.S.C. § 1367(c)(3) (a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims for which it has original jurisdiction"). If Plaintiffs again fail to state a claim pursuant to RESPA or TILA upon which relief can be granted, their state law claims will be remanded to state court.

IV. **CONCLUSION**

For these reasons, Defendants' Motion is granted in part. Plaintiffs' claims under RESPA and TILA (Count IV) are dismissed without prejudice. The Court will address Plaintiffs' remaining state law claims once an amended complaint is filed and Defendants have responded. An appropriate Order accompanies this Opinion.

DATED: February /9, 2019

JOSE L. LINARES
Chief Judge, United States District Court